141 T.C. No. 6

UNITED STATES TAX COURT

GLENN LEE SNOW, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 24783-09.                    Filed September 19, 2013.

        The issue before us concerns a dispute over the Rule 155 computation of the "underpayment" for purposes of applying the I.R.C. sec. 6662(a) accuracy-related penalty. In <u>Feller v. Commissioner</u>, 135 T.C. 497 (2010), we held that sec. 1.6664-2(c)(1), Income Tax Regs., was valid. This Opinion follows <u>Feller</u> and applies and explains the other provisions of sec. 1.6664-2, Income Tax Regs., for determining the amount of an "underpayment" that were not addressed in <u>Feller</u>.

        <u>Held</u>: Respondent properly computed petitioner's underpayment for purposes of I.R.C. sec. 6662(a).

_____

        [*]This opinion supplements our prior Memorandum Opinion, <u>Snow v. Commissioner</u>, T.C. Memo. 2013-114.

Glenn Lee Snow, pro se.

Martha J. Weber, for respondent.

SUPPLEMENTAL FINDINGS OF FACT AND OPINION

RUWE, Judge:  This matter is before the Court as a result of the parties'

dispute over the proper computations for entry of decision under Rule 155[1] in

connection with our Memorandum Findings of Fact and Opinion in Snow v.

Commissioner, T.C. Memo. 2013-114.  In Snow v. Commissioner, at *5, we held

that wages petitioner received as compensation for his work as a musician were

includable in his income.  Additionally, we held that petitioner was liable for the

accuracy-related penalty under section 6662(a) due to negligence and a substantial

understatement of income tax.  Id. at *6.  We also imposed a penalty pursuant to

section 6673(a) of $8,000.  Id. at *7.

Respondent filed a computation for entry of decision under Rule 155 on

May 21, 2013.  Respondent calculated that petitioner's tax liability was $12,968,

his section 6662(a) penalty was $3,707, and his section 6673(a) penalty was

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code (Code) in effect for the year at issue.

$8,000. Petitioner filed an objection to respondent's computation for entry of decision under Rule 155 on June 11, 2013. Petitioner agreed that respondent correctly calculated his tax liability of $12,968 in accordance with our opinion. Petitioner did not dispute the amount of his section 6673(a) penalty. However, petitioner disputed respondent's calculation of his section 6662(a) penalty. The issue for decision is whether respondent correctly calculated petitioner's section 6662(a) penalty.

FINDINGS OF FACT

On petitioner's 2007 Form 1040, U.S. Individual Income Tax Return, he reported $16,684.65 on line 64, "Federal income tax withheld from Forms W-2 and 1099". Attached to his return were Forms 4852, Substitute for Form W-2, Wage and Tax Statement, or Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. On the Forms 4852 petitioner reported that his various employers withheld $11,122.52 of Federal income tax, $4,507.85 of Social Security tax, and $1,054.28 of Medicare tax, which totaled $16,684.65. Petitioner incorrectly reported his Social Security tax and Medicare tax withholdings as Federal income tax withholdings on line 64 of his Form 1040. As a result, petitioner incorrectly

increased the amount he reported as his Federal income tax withholdings by $5,562.13. Petitioner received a refund of $16,684.65.

Respondent determined that only $11,117.65 of Federal income tax had actually been withheld from petitioner's compensation.[2] Respondent subtracted the $11,117.65 of Federal income tax withholdings from the $16,684.65 that petitioner reported had been withheld to determine that petitioner had received a $5,567[3] refund for which there had not been any Federal income tax withholdings.

In his computation for entry of decision respondent calculated that petitioner's tax liability is $12,968. In his calculation respondent added the $5,567 to petitioner's tax liability to determine a net underpayment of $18,535. Respondent labeled the $5,567 as "Overstatement of prepayment credit: April 15, 2008". Respondent then applied the 20% accuracy-related penalty under section 6662(a) to the $18,535 underpayment, calculating petitioner's section 6662(a) penalty to be $3,707.

---

[2]The notice of deficiency gave petitioner credit for the amounts that third party payors reported as Federal income tax withholdings to the Commissioner. Petitioner did not address or raise an issue with the $5 difference between the amount he reported as Federal income tax withholdings and the amount shown in the notice of deficiency.

[3]This amount consisted of $5,562.13 of Social Security and Medicare tax withholdings and approximately $5 that had never been withheld.

Petitioner objected to respondent including the $5,567 in the calculation of his underpayment.

OPINION

Section 6662(a) states "[i]f this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies." Section 6662 applies to the portion of any underpayment which is attributable to negligence or disregard of rules or regulations or any substantial understatement of income tax. See sec. 6662(b)(1) and (2).

Section 6664(a) provides the definition of the term "underpayment" for purposes of section 6662.

SEC. 6664(a). Underpayment.--For purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of--

(1) the sum of--

(A) the amount shown as the tax by the taxpayer on his return, plus

(B) amounts not so shown previously assessed (or collected without assessment), over

(2) the amount of rebates made.

For purposes of paragraph (2), the term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made.

The Secretary has promulgated section 1.6664-2, Income Tax Regs., to help clarify the term "underpayment" in section 6664. Section 1.6664-2(a), Income Tax Regs., states:

> The definition of underpayment also may be expressed as--
> Underpayment = W - (X + Y - Z), where
> W = the amount of income tax imposed;
> X = the amount shown as the tax by the taxpayer on his return;
> Y = amounts not so shown previously assessed (or collected without assessment); and
> Z = the amount of rebates made.

As a result, in order to calculate a taxpayer's underpayment we must determine: (1) the amount of income tax imposed; (2) the amount of tax reported on the return; (3) the amount of tax not shown on the return that was previously assessed (or collected without assessment); and (4) the amount of rebates made.

1. The amount of tax imposed

Section 1.6664-2(b), Income Tax Regs., provides that the amount of income tax imposed is "the amount of tax imposed on the taxpayer under subtitle A for the taxable year".[4] This amount is determined without regard to credits for tax

---

[4]Federal income taxes are imposed under subtit. A of the Code. Social

(continued...)

withheld under section 31.  Sec. 1.6664-2(b)(1), Income Tax Regs.  The amount of

tax imposed on petitioner under subtitle A for the 2007 taxable year was $12,968.

2.  The amount of tax shown on the return

Section 6664(a)(1)(A) instructs us to determine the "amount shown as tax

by the taxpayer on his return".  Section 1.6664-2(c)(1), Income Tax Regs.,

provides:

> For purposes of paragraph (a) of this section, the amount shown as
> the tax by the taxpayer on his return is the tax liability shown by the
> taxpayer on his return, * * * except that it is reduced by the excess of--
>
> (i) The amounts shown by the taxpayer on his return as credits
> for tax withheld under section 31 (relating to tax withheld on wages)
> * * *, over
>
> (ii) The amounts actually withheld, actually paid as estimated
> tax, or actually paid with respect to a taxable year before the return is
> filed for such taxable year.

In other words, section 1.6664-2(c)(1), Income Tax Regs., provides that for

purposes of paragraph (a) the amount of tax shown on petitioner's return is

reduced by the excess of the amount shown on his return as a section 31 credit

(i.e., the amount of income tax withheld) over the amounts actually withheld.[5]  We

---

[4](...continued)
Security and Medicare taxes are imposed under subtit. C.  See sec. 3101.

[5]As previously explained sec. 1.6664-2(a), Income Tax Regs., provides the
(continued...)

have previously held that section 1.6664-2(c)(1), Income Tax Regs., is valid. Feller v. Commissioner, 135 T.C. 497, 510-511 (2010). "The regulation extends the meaning of 'underpayment' to include a taxpayer's overstated credits for withholding. Sec. 1.6664-2(g), Example (3), Income Tax Regs. Accordingly, if a taxpayer overstates prepayment credits, such as the credit for wages withheld, the overstatement decreases the amount of tax shown on the return and increases the underpayment of tax." Id. at 503.

On his Federal income tax return petitioner reported that his tax liability was zero. On line 64 of his return petitioner reported that $16,684.65 of Federal income tax was withheld. This was the amount shown by petitioner as a credit for tax withheld under section 31. However, the $16,684.65 that petitioner reported as Federal income tax withheld erroneously included $5,562 of withheld Social Security and Medicare taxes and $5 for which no taxes had been withheld. Therefore, only $11,117.65 of Federal income tax was actually withheld.

As a result, under section 1.6664-2(c)(1), Income Tax Regs., we reduce the amount of petitioner's tax shown on the return ($0) by the excess of the amount shown on his return as withheld ($16,684.65) over the amount actually withheld

---

[5](...continued)
formula for computing the "underpayment".

($11,117.65).  Therefore, in accordance with this regulation the amount shown as the tax on petitioner's return for purposes of the underpayment formula in section 1.6664-2(a), Income Tax Regs., was negative $5,567; i.e., $0 minus ($16,684.65 minus $11,117.65).

In Feller v. Commissioner, 135 T.C. at 499-500, the taxpayer included $135,000 of fictitious withholdings on his 1992 Federal income tax return in which he claimed an $86,181 refund.  Under section 1.6664-2(c)(1), Income Tax Regs., the taxpayer in Feller appears to have had a negative tax shown on his return.  See id. at 529-530 (Gustafson, J., dissenting).  Petitioner's negative $5,567 "amount shown as tax" on his return appears to be similar to the negative "amount shown as tax" in Feller.  See id.

3.  Amount of tax not shown on the return that was previously assessed (or collected without assessment)

In Feller we found it unnecessary to address the meaning of section 6664(a)(1)(B) regarding amounts previously assessed (or collected without assessment).  Id. at 503.  We think it necessary to discuss now.

Section 1.6664-2(a)(1)(ii), Income Tax Regs., instructs us to determine the "[a]mounts not so shown previously assessed (or collected without assessment) (as

defined in paragraph (d) of this section)".  Section 1.6664-2(d), Income Tax Regs.,

provides:

> For purposes of paragraph (a) of this section, "amounts not so shown previously assessed" means only amounts assessed before the return is filed that were not shown on the return * * *.  <u>For purposes of paragraph (a) of this section, the amount "collected without assessment" is the amount by which the total of the credits allowable under section 31 * * * and other payments in satisfaction of tax liability made before the return is filed, exceed the tax shown on the return (provided such excess has not been refunded or allowed as a credit to the taxpayer)</u>.  [Emphasis added.]

No amounts were assessed by respondent before petitioner's return was

filed.  Petitioner had actual Federal income tax withholdings of $11,117.65.  This

amount was remitted to respondent from third-party payors.  This amount is a

section 31 credit.  The $11,117.65 was remitted to respondent before petitioner's

return was filed.  Therefore, petitioner had $11,117.65 of credits allowable under

section 31, which might qualify as amounts "collected without assessment".

However, petitioner received a refund of $16,684.65.  Section 1.6664-2(d),

Income Tax Regs., provides that the excess of credits allowable over the tax

shown on the return is an amount "collected without assessment" <u>if the excess has

not been refunded to the taxpayer</u>.[6]  The excess of the amount of credits allowable

---

[6]In sec. 1.6664-2(g), <u>Examples</u> (<u>1</u>) and (<u>2</u>), Income Tax Regs., the taxpayer had $23,000 of claimed sec. 31 credits.  The tax shown on the return was $18,000,

(continued...)

under section 31 ($11,117.65) over the tax shown on the return (negative $5,567)[7]

was refunded to petitioner ($11,117.65 + $5,567 = $16,684.65), therefore,

petitioner had $0 of collections without assessment.  Therefore, under section

1.6664-2(a)(1)(ii), Income Tax Regs., petitioner had $0 amounts collected without

assessment.

4.  The amounts of rebates made

In Feller v. Commissioner, 135 T.C. at 503, we found it unnecessary to

address the meaning of rebates in section 6664(a)(2).  We think it necessary to

discuss now.

Section 1.6664-2(a)(2), Income Tax Regs., instructs us to determine the

"amount of rebates made (as defined in paragraph (e) of this section)."  Section

---

[6](...continued)
and the taxpayer received a $5,000 refund.  Additionally, "the taxpayer failed to
claim on the return a credit of $1,500 for income tax withheld.  This $1,500
constitutes an amount collected without assessment as defined in paragraph (d) of
this section."  This is the case because the taxpayer had $24,500 of credits
allowable under sec. 31 ($23,000 claimed and $1,500 unclaimed).  The $24,500 of
allowable credits exceeded the $18,000 tax shown on the return plus the $5,000 of
refunds by $1,500 ($24,500 - $18,000 - $5,000 = $1,500).  Therefore, under sec.
1.6664-2(d), Income Tax Regs., the taxpayer had $1,500 of "[a]mounts not so
shown previously assessed (or collected without assessment)."

[7]We use "the amount shown as the tax by the taxpayer on his return" as
determined under sec. 1.6664-2(c), Income Tax Regs.

1.6664-2(e), Income Tax Regs., provides a formula to calculate rebates for

purposes of the underpayment formula in paragraph (a).

> (e).  Rebates.--The term "rebate" means so much of an abatement credit, refund or other repayment, as was made on the ground that the tax imposed was less than the excess of--
>
> (1)  The sum of--
>
> (i) The amount shown as the tax by the taxpayer on his return, plus
> (ii) Amounts not so shown previously assessed (or collected without assessment), over
>
> (2) Rebates previously made.[8]

The term "rebate" means "so much of [i.e., that portion of] an abatement

credit, refund or other repayment, as was made on the ground [i.e., on the basis

of]" of the formula in section 6664(a) and section 1.6664-2(e), Income Tax Regs.[9]

That formula starts with the "tax imposed" and factors in the amount shown

as the tax by the taxpayer on his return and amounts "previously" assessed or

---

[8]This regulation tracks the statutory language of sec. 6664(a) which provides:  "For purposes of paragraph (2), the term 'rebate' means so much of an abatement, credit, refund, or other repayment, as was made on the ground that tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made."

[9]An abatement, credit, or other repayment was not made to petitioner. Therefore, in determining the amount of rebates we are concerned only with the refund petitioner received.

collected. See sec. 6664(a). Because the term "rebate" is computed with reference to the taxpayer's return for purposes of defining an underpayment of tax required to be shown on a return, the term "rebates made" must refer to amounts claimed on the taxpayer's return. This is also consistent with the fact that the statutory and regulatory formula for determining "rebates made" considers "rebates previously made".

As we noted earlier, the tax imposed on petitioner for the 2007 taxable year was $12,968.

Section 1.6664-2(c)(1), Income Tax Regs., defines the amount shown as the tax by the taxpayer on the return for purposes of paragraph (a). Section 1.6664-2(a)(2), Income Tax Regs., provides that the term "amount of rebates" is defined in paragraph (e). As a result, for purposes of computing rebates pursuant to section 1.6664-2(e), Income Tax Regs., the term "amount shown as the tax by the taxpayer on his return" is the amount that is determined under section 1.6664-2(c), Income Tax Regs. Therefore, as previously explained the amount shown as the tax by petitioner on his return is negative $5,567.

Section 1.6664-2(d), Income Tax Regs., defines the amounts not so shown previously assessed (or collected without assessment) for purposes of paragraph (a). Paragraph (a) of the regulation provides that the amount of rebates is defined

in paragraph (e). Thus, for purposes of computing rebates pursuant to section 1.6664-2(e), Income Tax Regs., the term "[a]mounts not so shown previously assessed (or collected without assessment)" is the amount determined under section 1.6664-2(d), Income Tax Regs. We have previously determined that petitioner had $0 not so shown that was previously assessed or collected without assessment under section 1.6664-2(d), Income Tax Regs. We will use this amount ($0) in calculating rebates under section 1.6664-2(e), Income Tax Regs.

Section 1.6664-2(e)(2), Income Tax Regs., requires us to determine "rebates previously made". The regulation does not define rebates previously made. The regulation provides that rebates previously made is a component of calculating rebates. The use of the phrase "previously made" implies that there is a point in time in which a "rebate" must be determined to have been made so that "rebates previously made" were made prior to the "rebate". The regulation does not explicitly state the point in time.

The logical cutoff point in time to determine a "rebate" would be at the time the return that claims a refund is filed. Therefore, we would interpret "rebates previously made" to mean rebates made before the return was filed. This argument is supported by section 1.6664-2(d), Income Tax Regs., which provides that the point in time to determine whether an amount has been assessed or

collected without assessment is "before the return is filed". If we look to when the return was filed to determine whether an amount has been assessed or collected, then it logically follows that we should also to look to the filing of the return to determine whether a rebate was previously made.

Furthermore, section 1.6664-2(e)(1)(i), Income Tax Regs., requires us to look at the tax shown on the taxpayer's return. The use of the return under section 1.6664-2(e)(1), Income Tax Regs., supports the argument that the point in time for defining "rebates previously made" in section 1.6664-2(e)(2), Income Tax Regs., refers to rebates made prior to the filing of the taxpayer's return.

Although the regulation does not define "rebates previously made" a commonsense interpretation would define this term to mean rebates made before the return is filed.

No rebates were made to petitioner before he filed his return.

Since the tax imposed ($12,968) exceeded the amount shown as the tax on petitioner's return (negative $5,567) plus amounts not so shown that were previously assessed or collected ($0) over rebates previously made ($0), then the amounts of rebates made under section 1.6664-2(e), Income Tax Regs., is $0.

5. The amount of the underpayment

Section 1.6664-2(a), Income Tax Regs., provides that the amount of the underpayment is equal to the amount of income tax imposed ($12,968) minus the amount shown as tax by petitioner on his return (negative $5,567) minus amounts of tax not shown on the return that were previously assessed or collected ($0) plus the amounts of rebates made ($0). As a result, petitioner's underpayment for purposes of section 6664(a) was $18,535 ($12,968 plus $5,567[10] minus $0 plus $0). Accordingly, under section 6662(a) petitioner is liable for an accuracy-related penalty of $3,707 (20% of $18,535).

Our application of section 1.6664-2, Income Tax Regs., is consistent with Feller and produces a result that bases the section 6662 penalty on an "underpayment" amount that represents the amount of revenue that the Government was deprived of as a result of amounts actually shown on petitioner's return. Petitioner did not pay his $12,968 tax liability and received a refund of $16,684.65 that included $5,567 of reported withheld income tax that was never actually withheld. As a result, $18,535 ($12,968 + $5,567) was the actual amount of money that petitioner deprived the Government of. The underpayment as

_____

[10]Subtracting a negative subtrahend from a positive minuend results in adding the absolute value of the subtrahend to the minuend.

defined in section 1.6664-2(a), Income Tax Regs., is equal to the true amount the Government was deprived of as a result of petitioner's return.

Conclusion

We hold that respondent correctly calculated petitioner's section 6662(a) penalty of $3,707.

To reflect the foregoing,

An appropriate order will be issued, and decision will be entered for respondent.