149 T.C. No. 19

UNITED STATES TAX COURT

JAMES M. GALLOWAY AND SARAH M. GALLOWAY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8170-14.                          Filed October 10, 2017.


On their 2011 Federal income tax return, Ps claimed a $7,500 credit under I.R.C. sec. 25A for expenses related to their children's postsecondary education. Petitioners failed to carry from Form 8863 to Form 1040 the $4,500 nonrefundable portion of the credit, claiming on Form 1040 only the $3,000 refundable portion, which reduced the tax shown on the return from $6,984 to $3,984. In processing Ps' return, R adjusted Ps' tax liability to take into account the $4,500 nonrefundable portion of the credit and refunded to Ps $4,500 more than the amount they had requested. After examination R disallowed Ps' claimed $7,500 credit in full, and Ps now concede that they are not entitled to any credit under I.R.C. sec. 25A for 2011.

<u>Held</u>: When the Commissioner makes a rebate to a taxpayer for a year in excess of the amount of tax shown on the taxpayer's return for the year, that excess increases the taxpayer's "deficiency", within the meaning of I.R.C. sec. 6211(a); thus Ps' deficiency for 2011 is $7,500 ($6,984 − ($3,984 − $4,500)).

Held, further, R's imposition of a $1,500 accuracy-related penalty under I.R.C. sec. 6662(a) is sustained.

T. Keith Fogg, Andrew R. Roberson, and Denise M. Mudigere, for petitioners.

Lori A. Amadei, for respondent.

HALPERN, Judge:  Respondent determined a deficiency of $7,500 in petitioners' 2011 Federal income tax and an accuracy-related penalty for that year of $1,500.  The deficiency arises from respondent's disallowance of a $7,500 American Opportunity Credit (AOC) petitioners claimed under section 25A(i)(1)[1] on their 2011 Federal income tax return.  Petitioners reported a total credit of $7,500 on Form 8863, Education Credits (American Opportunity and Lifetime Learning Credits), including a refundable portion of $3,000.  They failed, however, to carry the $4,500 nonrefundable portion of the credit to their Form 1040, U.S. Individual Income Tax Return.  Respondent reduced petitioners' tax liability by $4,500 in processing their return to take into account the nonrefundable portion of the credit and refunded to petitioners $4,500 more than

_____

[1]All section references are to the Internal Revenue Code in effect for 2011 unless otherwise indicated.

they had requested. The parties agree that the $4,500 additional refund was a "rebate", within the meaning of sections 6211(b)(2) and 6664(a) (flush language). Petitioners concede that they are not entitled to any AOC for 2011. The parties thus also agree that the tax imposed on petitioners for 2011 by subtitle A is $6,984, the amount shown as "total tax" on line 61 of petitioners' Form 1040. The issues remaining for decision are: (1) whether respondent correctly computed petitioners' 2011 deficiency (in particular, whether the excess of the rebate respondent made over the tax shown on petitioners' return (net of the refundable credit) increases their deficiency from $6,984 to $7,500) and (2) whether petitioners are liable for the accuracy-related penalty that respondent determined.

FINDINGS OF FACT

Petitioners' Reporting of Education Credits for 2007

On a Form 8863, Education Credits (Hope and Lifetime Learning Credits), included with their 2007 Form 1040, petitioners claimed a Hope Credit for qualified expenses of two of their dependent children, G.G. and J.G. The total education credits reported on line 17 of petitioners' 2007 Form 8863 also appear on line 49 of their Form 1040 for that year, reducing their total tax to zero.

Petitioners' 2011 Reporting

Petitioners' Form 1040 for 2011 also included a Form 8863, which reported qualified expenses for each of J.G., G.G., and E.G. (another dependent child of petitioners).  G.G. and J.G. each completed his or her undergraduate degree in the spring term of 2011.  Petitioners' 2011 Form 8863 reports a tentative AOC of $2,500 per child, or $7,500, and a refundable AOC of $3,000 ($7,500 × 40%).  The $3,000 refundable AOC also appears on line 66 of petitioners' 2011 Form 1040.

Part IV of petitioners' 2011 Form 8863 is incomplete.  It reports on line 15 the $4,500 difference between the total AOC claimed and the $3,000 refundable portion of the credit, but that difference is not carried to either line 23 of the Form 8863 (nonrefundable education credits) or line 49 of petitioners' Form 1040.

Petitioners' 2011 Form 8863 provided no facts related to the claimed credit other than the qualified expenses attributable to each child.

Petitioners, who resided in California when they filed their petition, reported $8,287 of Federal income tax withheld from their wages for 2011.  Their Form 1040 for that year did not include a Form 8275, Disclosure Statement.

Petitioners' 2011 Refund

Petitioners claimed a refund on their 2011 return of $4,303, but respondent alleges--and petitioners concede--that he actually issued them a refund for that year of $8,803. The record provides no indication that they returned any portion of their 2011 refund.

Mr. Galloway's Trial Testimony

Mr. Galloway conceded at trial that petitioners were not entitled to any AOC for tuition or expenses paid on behalf of E.G. in 2011, but he did not explain the basis for that concession. On brief, petitioners concede that they are not entitled to any AOC for 2011. When we asked Mr. Galloway at trial whether he had any testimony to show reasonable cause for petitioners' belief that they were entitled to the claimed AOC, he responded: "When we prepared the * * * taxes, we used a guide--I believe it was Lassiter's Guide--in doing so. It is a confusing section with two options to take for educational credits. And we did the best we could to follow the guidelines in there and the instructions on the forms."

OPINION

I.     The Amount of Petitioners' Deficiency

    A.     Applicable Law

Section 6211(a) defines "deficiency" to mean "the amount by which the tax imposed by subtitle A * * * exceeds the excess of -- (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return * * * plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over -- (2) the amount of rebates, as defined by subsection (b)(2), made."  Section 6211(b)(2) defines "rebate" as "so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed by subtitle A * * * was less than the excess of the amount specified in subsection (a)(1) over the rebates previously made."

Before the enactment of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. No. 100-647, 102 Stat. 3342, taxpayers could not contest the Commissioner's disallowance of refundable credits in deficiency proceedings before this Court if they had no tax liability even after disallowance of the credits and thus had no deficiencies.  See H.R. Rept. No. 100-795, at 366 (1988); S. Rept. No. 100-445, at 387 (1988), 1988 U.S.C.C.A.N. 4515, 4897.  Congress amended section 6211(b)(4) as part of TAMRA to remedy that situation.  TAMRA sec.

1015(r)(2), 102 Stat. at 3572; see also Wilson v. Commissioner, T.C. Memo. 2001-139, 2001 WL 667843, at *2 ("The legislative history of section 6211(b)(4) reveals that the provision was enacted to expand the definition of a deficiency to permit taxpayers to contest the disallowance of the earned income credit in the Tax Court."); H.R. Rept. No. 100-795, supra at 366; S. Rept. No. 100-445, supra at 387, 1988 U.S.C.C.A.N. at 4897. Under section 6211(b)(4), any excess of refundable credits allowable over the tax imposed by subtitle A, and any excess of reported refundable credits over the tax reported on a taxpayer's return, "shall be taken into account as negative amounts of tax" for purposes of section 6211(a). Thus, the disallowance of refundable credits claimed by a taxpayer with no tax liability even after that disallowance would result in a deficiency because the tax imposed would be larger (that is, less negative) than the tax shown on the taxpayer's return.

The refundable portion of the AOC is among the refundable credits to which section 6211(b)(4), by its terms, applies. Section 25A(b)(1) allows a "Hope Scholarship Credit" of up to $1,500 per year of an eligible student's qualified tuition and related expenses for postsecondary education. Section 25A(i)(1) increased the limit to $2,500 per year for a taxable year beginning in 2009, 2010, 2011, or 2012 (and referred to the increased Hope Scholarship Credit

as the "American Opportunity Tax Credit"). A credit under section 25A can be claimed for an eligible student for no more than four taxable years. Sec. 25A(b)(2)(A), (i)(2). Although the AOC is generally limited to the taxpayer's tax liability, sec. 26(a)(1), 40% of the credit is refundable to the taxpayer to the extent it exceeds the taxpayer's tax liability, sec. 25A(i)(6). The credits to which section 6211(b)(4) applies include "the credits allowable under section[] * * * 25A by reason of subsection (i)(6) thereof".

B.    The Parties' Positions

Respondent's determination of a $7,500 deficiency reflects the following calculation: $6,984 tax imposed – ($3,984 tax shown on return – $4,500 rebate).[2] The $3,984 tax shown on petitioners' return--an amount with which petitioners agree--equals the $6,984 total tax shown on line 61 of their 2011 Form 1040 reduced by the $3,000 refundable credit reported on line 66 of that form. Cf. sec. 6211(b)(1) (providing that the tax imposed and the tax shown on a taxpayer's return are determined without regard to specified credits that do not include the credit allowed by section 25A); Rand v. Commissioner, 141 T.C. 376, 387-388

---

[2]The parties agree that respondent did not previously assess any deficiencies against petitioners for 2011 and did not collect as deficiencies any amounts from petitioners for that year. Thus, petitioners' 2011 deficiency turns on three amounts: tax imposed, tax shown on the return, and rebates.

(2013) (reasoning that credits not specified in section 6211(b)(1) reduce the tax shown on the taxpayer's return for the purpose of computing a deficiency). Respondent's position rests on the premise that the excess of the tax shown on a taxpayer's return over any rebates made can be a negative amount that increases the taxpayer's deficiency when the amount of the rebate exceeds the amount of tax shown. (Because the excess of the tax shown on the return over rebates is subtracted from the tax imposed to arrive at the taxpayer's deficiency, if that excess is a negative number, subtracting it from the tax imposed will increase the taxpayer's deficiency.)

In normal parlance, one might say that if amount B is larger than amount A, then A does not exceed B by any amount--that is, the excess of A over B is zero. Nonetheless, it "is both linguistically and mathematically possible" for the excess of a smaller number over a larger one to be a negative amount. Indianapolis Life Ins. Co. v. United States, 115 F.3d 430, 435 (7th Cir. 1997). Moreover, as respondent observes, in applying the statutory formula provided in section 6211(a) for determining a deficiency, we have implicitly accepted the premise that the excess of the tax shown on a return over rebates can be negative. See Voigt v. Commissioner, T.C. Memo. 2004-62; Wilson v. Commissioner, 2001 WL 667843; Blore v. Commissioner, T.C. Memo. 2000-326. Each of those cases involved

similar facts. Wilson, for example, involved a taxpayer who had a tax liability of zero and claimed an overpayment on the basis of an earned income tax credit of $335. The Commissioner disallowed the claimed credit. We concluded that the disallowance of the credit resulted in a deficiency. Wilson v. Commissioner, 2001 WL 667843, at *3 ("[R]espondent's determination that petitioner's correct tax liability is zero and that petitioner is not entitled to an earned income credit constitutes the determination of a deficiency within the meaning of section 6211."). Under section 6211(b)(4), the claimed credit resulted in a negative amount of tax shown on the taxpayer's return, specifically -$335. The tax imposed was zero. The Commissioner made no rebates to the taxpayer for the year in issue. Thus, the tax imposed ($0) exceeded the excess of the tax shown on the return over rebates (-$335 - $0 = -$335). The amount of the rebate ($0) was larger than the negative amount of tax shown on the return. Thus, our determination of a deficiency necessarily rested on the premise that the excess of tax shown over rebates can be a negative number. Were that not so, the taxpayer in Wilson would have had no deficiency and would have been unable to contest in this Court the Commissioner's disallowance of his claimed earned income tax credit, contrary to the purpose of section 6211(b)(4).

In the face of our prior caselaw and the need to carry out the purpose of section 6211(b)(4), it is not surprising that petitioners do not challenge the general proposition that, in computing a taxpayer's deficiency, the excess of the tax shown on a return over rebates can be a negative number. They allege, however, that that proposition holds only "where no rebates exist." They argue that "it does not follow" from the general proposition "that an 'excess' of tax shown over the rebate exists when Respondent has made a 'rebate' exceeding the positive tax shown on the return." And why might it be that the excess of tax shown over rebates can be negative in some cases and not others? Petitioners profess concern about possible "manipulation" by the Commissioner: "The logical extension of Respondent's argument", they warn, "would permit Respondent to manipulate the[] calculation by unilaterally issuing rebates whenever it benefitted Respondent." On the basis of that concern, petitioners argue that their deficiency is limited to the tax imposed of $6,984.

C.    Analysis

For several reasons, we reject petitioners' proposed limitation on the amount of their deficiency and accept respondent's calculation. To begin with, the text of section 6211(a) provides no basis for giving a different interpretation to the phrase "the excess of * * * the amount shown as the tax by the taxpayer upon his return

* * * over * * * the amount of rebates * * * made" depending on whether any rebates have, in fact, been made.  Second, we are hard pressed to imagine cases in which the Commissioner would find it to his advantage to pay a taxpayer an amount to which the taxpayer was not entitled simply to give him grounds to recover the overpayment as part of a deficiency.  Third, even were such prospects to arise, the Commissioner could not willy-nilly treat payments to taxpayers as rebates.  An amount paid to a taxpayer qualifies as a "rebate" only to the extent that it was made on the ground that the tax imposed was less than the excess of the tax shown on a taxpayer's return (plus prior assessments) over any prior rebates.  See sec. 6211(b)(2).[3]

---

[3]Although petitioners have not given us an example of a case in which the Commissioner would be advantaged by making a strategic "rebate" to manipulate the amount of a taxpayer's deficiency, petitioners may have in mind the possibility of payments made to a taxpayer to avoid the limitation on "underpayment" we established in Rand v. Commissioner, 141 T.C. 376 (2013).  As explained infra part II.A, the definition of "underpayment" in sec. 6664(a) is essentially the same as the definition of "deficiency" in sec. 6211(a)--that is, the amount by which the tax imposed exceeds the excess of the tax shown on the return over any rebates.  Because no rule analogous to that of sec. 6211(b)(4) then applied for the purpose of determining an underpayment, we concluded in Rand v. Commissioner, 141 T.C. at 390-391, that, for that purpose, refundable credits could not reduce the tax shown on a return below zero.  But see Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. Q, Protecting Americans from Tax Hikes Act of 2015 (PATH), sec. 209(a), 129 Stat. at 3084 (amending sec. 6664(a) to provide that a rule similar to that of sec. 6211(b)(4) applies for purposes of sec. 6664(a)).

(continued...)

Petitioners concede that they received $7,500 from the Government to which they were not entitled.  They agree that they are liable for tax of $6,984 for 2011.  They had $8,287 withheld from wages during that year.  Thus, they were entitled to a refund of $1,303 ($8,287 – $6,984).  Instead, they received a refund of $8,803--$7,500 more than they deserved.  Petitioners offer no logical reason why their deficiency should be limited to $6,984 and the Government forced to file an erroneous refund suit under section 7405, if still timely, to collect the additional $516.  The Commissioner would have no grounds for making a rebate to a taxpayer in excess of the tax shown on the taxpayer's return unless the

---

[3](...continued)
Suppose, for example, that petitioners had carried from Form 8863 to their Form 1040 the nonrefundable portion of their claimed AOC.  In that case, the tax shown on their return, for purposes of computing a deficiency, would have been –$516 ($6,984 – $7,500).  Respondent's disallowance of the claimed AOC would have resulted in a deficiency of $7,500 by reason of sec. 6211(b)(4).  But under our holding in Rand (and leaving aside the possible impact of the PATH Act amendment), petitioners' "underpayment", for the purpose of computing accuracy-related penalties, would have been limited to the $6,984 tax imposed on them.  The $3,000 refundable portion of petitioners' AOC would not have reduced the tax shown on their return, for purposes of sec. 6664(a), below zero.  Petitioners might be suggesting that respondent's gratuitous payment to them of at least $516 would have enabled him to increase their underpayment to $7,500, thereby increasing their liability for an accuracy-related penalty.  But respondent would not have made the imagined payment on the ground that the tax imposed by subtitle A on petitioners was less than –$516.  Thus, the payment would not have been a "rebate" within the meaning of either sec. 6211(b)(2) or 6664(a) (flush language) and would not have affected the amount of petitioners' underpayment.

Commissioner had reason to believe that the taxpayer was entitled to refundable credits. Section 6211(b)(4) reflects Congress' intent to allow issues concerning refundable credits to be litigated in this Court. Thus, we not only agree with the parties that, in a typical case involving no rebates, the excess of the tax shown on a taxpayer's return over rebates can be negative (and would be negative whenever the tax shown is itself negative because of claimed refundable credits); we also see no basis in either the text or purpose of the relevant rules for reaching a different result in a case in which the Commissioner made a rebate to the taxpayer within the meaning of section 6211(b)(2).

D.    Conclusion

For the reasons described above, we hold explicitly what was implicit in several of our prior cases: the excess of the tax shown on a taxpayer's return over rebates made, for the purpose of computing a deficiency, can be a negative number, regardless of whether the Commissioner, in fact, made any rebates to the taxpayer for the year in issue. Thus, the excess of the tax shown on a return over rebates can be negative not only when rebates are zero, as was the case in Blore, Wilson, and Voigt, but also when, as here, the Commissioner has made a rebate of a positive amount.

Consequently, petitioners' deficiency for 2011, under the definition provided in section 6211(a), is $7,500: the amount by which the $6,984 tax imposed on them for that year under subtitle A exceeds –$516 (which, in turn, is the excess of the tax shown on petitioners' 2011 return over the $4,500 rebate made by respondent).

II.     Petitioners' Liability for the Accuracy-Related Penalty

A.     Applicable Law

Section 6662(a) and (b)(1) provides for an accuracy-related penalty of 20% of the portion of an "underpayment" of tax attributable to negligence or disregard of rules and regulations. Section 6662(a) and (b)(2) provides for the same penalty on the portion of an underpayment of tax attributable to "[a]ny substantial understatement of income tax."

The definitions of "underpayment" and "understatement" provided in sections 6664(a) and 6662(d)(2)(A), respectively, closely parallel the section 6211(a) definition of "deficiency". Section 6664(a) defines "underpayment" to mean "the amount by which any tax imposed by this title exceeds the excess of--(1) the sum of--(A) the amount shown as the tax by the taxpayer on his return, plus (B) amounts not so shown previously assessed (or collected without assessment), over (2) the amount of rebates made." For purposes of section 6664(a)(2), "the

term 'rebate' means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed was less than the excess of the amount specified in * * * [section 6664(a)(1)] over the rebates previously made." Sec. 6664(a) (flush language). Section 6662(d)(2)(A) defines the term "understatement" to mean "the excess of--(I) the amount of tax required to be shown on the return for the taxable year, over (ii) the amount of tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2))."

In the case of an individual, an understatement of income tax is "substantial" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). An understatement is reduced, however, by the portion attributable to the treatment of an item for which the taxpayer had "substantial authority" or, in the case of items adequately disclosed, a "reasonable basis". Sec. 6662(d)(2)(B). A taxpayer's position has substantial authority if the weight of the authorities in support of that position is substantial in the relation to the weight of any contrary authorities. See sec. 1.6662-4(d)(3), Income Tax Regs. Disclosure is adequate if it includes "the relevant facts affecting the item's tax treatment". Sec. 6662(d)(2)(B)(ii)(I). Subject to exceptions provided in an annual revenue procedure, disclosure must be made on a Form 8275 or, in the case of

positions contrary to a regulation, a Form 8275-R. Sec. 1.6662-4(f)(1) and (2), Income Tax Regs.; see also Rev. Proc. 2012-15, 2012-7 I.R.B. 369 (identifying circumstances under which disclosure on a taxpayer's 2011 return is adequate for purposes of reducing an understatement of income tax under section 6662(d)). The "reasonable basis" standard is "a relatively high standard of tax reporting" that generally requires a position to be "reasonably based" on relevant authorities. See sec. 1.6662-3(b)(3), Income Tax Regs.

Section 6664(c)(1) provides an exception to the imposition of the section 6662(a) accuracy-related penalty if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith. Section 1.6664-4(b)(1), Income Tax Regs., provides:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer. * * *

The Commissioner bears the burden of production with respect to penalties. See sec. 7491(c). To meet that burden, he must produce evidence regarding the appropriateness of imposing the penalty. Higbee v. Commissioner, 116 T.C. 438,

446 (2001). If the Commissioner carries his burden of production, the taxpayer then bears the burden of proving that he or she is entitled to relief because of substantial authority or an adequately disclosed position with a reasonable basis, or under section 6664(c)(1). See id.

B.    Respondent's Satisfaction of His Burden of Production

Respondent calculates petitioners' 2011 underpayment and understatement to be $7,500, applying the same formula he uses to compute their deficiency for that year. That is, according to respondent, petitioners' underpayment and understatement is the tax imposed on petitioners for 2011 ($6,984) reduced by the excess of the tax shown on their return ($3,984) over the rebate he made to them for that year ($4,500). Respondent supports his calculation of petitioners' underpayment by referring to prior cases in which we have implicitly accepted the proposition that, in computing an underpayment, as in computing a deficiency, the excess of the tax shown on a taxpayer's return over any rebates can be a negative number. See Snow v. Commissioner, 141 T.C. 238 (2013); Sadler v. Commissioner, 113 T.C. 99 (1999); Rice v. Commissioner, T.C. Memo. 1999-65.

Petitioners initially argued that their underpayment for 2011 was limited to $6,984 because the excess of the tax shown on their return over the rebate was zero. Later, petitioners conceded that "the term 'excess' means the same in the

definitions of underpayment and deficiency" and that "prior case law has allowed the term to be a negative number when calculating underpayment."

Although petitioners appear to accept that their underpayment for 2011 was $7,500, they also seem to argue that, by contrast, their understatement is limited to $3,000. According to petitioners: "Section 6662(a)(2) does not apply to * * * [them] because the amount they actually sought as a refund on their return would not satisfy the $5,000 statutory threshold. Had Respondent not issued the 'rebate' refund on which he now seeks to penalize * * * [them], the amount of the deficiency would be under the $5,000 threshold for penalty application." (We assume that petitioners mean to refer to section 6662(b)(2) and to the amount of their understatement, rather than their deficiency.)

If petitioners are claiming that the $4,500 additional refund they received, which they concede to have been a rebate, should not be included in the calculation of their understatement, that claim is contrary to the statutory definition of "understatement" provided in section 6662(d)(2)(A). Under that definition, the amount of tax shown on a taxpayer's return is "reduced by any rebate" before the net amount is compared to the tax imposed on the taxpayer. Thus, by definition, rebates made to a taxpayer can increase the taxpayer's understatement for purposes of the accuracy-related penalty. That does not raise

the prospect of a taxpayer's being penalized for the Commissioner's actions. Again, the Commissioner cannot at his whim pay refunds that qualify as rebates. For a refund to meet the definition of "rebate", it must rest on a determination that the tax imposed on a taxpayer is less than the tax shown on the taxpayer's return. Secs. 6211(b)(2), 6664(a) (flush language). Any such determination would generally rely on information submitted by the taxpayer.[4] If the tax shown on a taxpayer's return was fully consistent with all information provided to the Commissioner, he would have no grounds for making a rebate. In the present case, respondent made a $4,500 rebate to petitioners on the basis of their claim of a $4,500 nonrefundable AOC on Form 8863 that they failed to carry to their Form 1040 in what appeared to be a clerical error.

For the reasons explained above, we conclude that petitioners' understatement for 2011 (before considering any reduction under section

---

[4]In theory, the Commissioner might make a rebate on the basis of erroneous third-party reporting that would increase the affected taxpayer's understatement for purposes of the accuracy-related penalty. Were that to occur, the taxpayer should be able to show that there was reasonable cause for the portion of his underpayment attributable to the rebate and that he acted in good faith with respect to that portion, as long as he did nothing to initiate the rebate and bore no responsibility for the erroneous third-party reporting. Cf. sec. 6664(c)(1). In the present case, because respondent made the rebate on the basis of petitioners' erroneous reporting on their Form 8863, in assessing their reasonable cause defense under sec. 6664(c)(1), we must consider the grounds for those actions of petitioners that led to the rebate. See infra part II.C.2.

6662(d)(2)(B)) equals their $7,500 underpayment for that year. Because that amount exceeds $5,000 (which, in turn, is greater than 10% of the $6,984 tax required to have been shown on their return), petitioner's understatement (unless reduced under section 6662(d)(2)(B)) is a substantial understatement. Consequently, respondent has met his burden of production in regard to the accuracy-related penalty he determined.

C.    Petitioners' Defenses

1.    Reduction of Understatement Due to Substantial Authority or Adequate Disclosure and Reasonable Basis

Petitioners argue that, even if the rebate they received increases their understatement, as defined by section 6662(d)(2)(A), their understatement is nonetheless limited to $3,000 by reason of section 6662(d)(2)(B) (relating to positions supported by substantial authority and adequately disclosed positions with a reasonable basis). According to petitioners:

> [E]ven if the $4,500 is part of the understatement as an initial matter, it is removed from the understatement because there is or was substantial authority for the taxpayers' not claiming the nonrefundable portion of the credit. It was Respondent's position, not Petitioners', that Petitioners should receive a refund of the $4,500. Further, in the alternative * * * there was disclosure on the form that is used to calculate education credits and a reasonable basis for the taxpayers not to claim the $4,500 on the return.

We can readily dismiss petitioners' substantial authority and adequate disclosure arguments. We do not view petitioners as having claimed only a $3,000 refundable AOC: Their Form 8863 reported a total AOC of $7,500. Petitioners are not subject to the accuracy-related penalty for their failure to claim a $4,500 nonrefundable AOC on their Form 1040 but instead for their claim of such a credit on their Form 8863. Because the refundable portion of the AOC is, by definition, 40% of the total AOC to which a taxpayer is entitled, sec. 25A(i)(6), claiming a $3,000 refundable AOC and no nonrefundable AOC cannot be supported by substantial authority.

Petitioners obviously failed to meet the standards for adequate disclosure of their position in regard to the claimed AOC. Their 2011 return simply claimed the credit without disclosing all of the facts relevant to their claim. Moreover, their return included no Form 8275. Rev. Proc. 2012-15, supra, does not list the claim of an AOC among the positions for which disclosure on the relevant form (without a Form 8275 or Form 8275-R) constitutes adequate disclosure. Finally, petitioners do not explain how the claim of a refundable AOC and no claim of a nonrefundable AOC can possibly have a reasonable basis.

Petitioners' understatement thus remains a substantial understatement after taking into account section 6662(d)(2)(B). Because we conclude that petitioners'

$7,500 underpayment was attributable to a substantial understatement of income tax, we need not consider respondent's alternative argument that petitioners' underpayment was also attributable to negligence.

### 2. Reasonable Cause and Good Faith

Petitioners argue that they "acted reasonably and in good faith under the circumstances and mistakenly believed that they were entitled to the credit at the time of filing." They claim that "they attempted to follow the instructions of the program used to self-prepare returns" but made a "mistake" that "was driven by confusion".

Respondent observes that petitioners' reporting of a refundable AOC on their Form 1040 was inconsistent with their failure to claim any nonrefundable AOC on that form and that this inconsistency "suggests that * * * [petitioners] did not make much effort to determine their entitlement to any part of the credit." Respondent further argues that petitioners' failure to return the excessive portion of the refund they received, even after that excess had been brought to their attention, demonstrates a lack of good faith.

As noted above, under the regulations "an honest misunderstanding of * * * law" can be an indication of reasonable cause and good faith, but only if that misunderstanding "is reasonable in light of all the facts and circumstances". Sec.

1.6664-4(b)(1), Income Tax Regs.  Petitioners have not described for us the source of their confusion or the nature of their mistake.  Mr. Galloway conceded at trial, without providing any explanation, that petitioners were not entitled to an AOC for tuition or expenses paid on behalf of E.G.  In their posttrial briefs, petitioners have offered us no further elucidation of the basis for the belief, which they now concede to have been mistaken, that they were entitled to any portion of the AOC they claimed.  Consequently, petitioners have not met their burden of proving the existence of reasonable cause for any portion of the underpayment resulting from respondent's disallowance of the claimed AOC.

The limited record before us suggests that petitioners conceded the 2011 AOC they claimed for J.G. and G.G. because they had claimed AOCs for those children for each of the four prior taxable years.  Petitioners claimed an AOC for 2007 for qualified expenses of J.G. and G.G., each of whom completed an undergraduate degree in 2011.  We can reasonably surmise that petitioners also claimed AOCs for J.G. and G.G. in each of 2008, 2009, and 2010.  Had that been the case, petitioners would not have been entitled to claim an AOC for J.G. and G.G. for 2011 because of the four-taxable-year limitation provided in section 25A(b)(2)(A) and (i)(2).  Perhaps petitioners were under the mistaken impression that they could claim AOCs for each of their children for four academic years

rather than four <u>taxable</u> years. Even if petitioners had established that that had been the basis of their misunderstanding, however, we would not have viewed that misunderstanding as reasonable under the circumstances.

In assessing the reasonableness of a taxpayer's misunderstanding of the law for the purpose of applying the reasonable cause exception to the accuracy-related penalty, we have placed significant weight on the degree of clarity of the applicable law. For example, we have accepted taxpayers' reasonable cause defenses when the relevant law was uncertain or ambiguous. <u>See</u> <u>Stromme v. Commissioner</u>, 138 T.C. 213, 222 (2012) ("Given the ambiguity in this area of the law, we find the Strommes' confusion reasonable and honest."); <u>Rolfs v. Commissioner</u>, 135 T.C. 471, 496 (2010) ("[G]iven all the facts and circumstances, including the uncertain state of the law, we find that petitioners acted with reasonable cause and in good faith."), <u>aff'd on other grounds</u>, 668 F.3d 888 (7th Cir. 2012). By contrast, in <u>Remy v. Commissioner</u>, T.C. Memo. 1997-72, 1997 WL 52446, we rejected the reasonable cause defense of a taxpayer who had claimed a deduction that was contrary to settled law. The taxpayer in <u>Remy</u> was a physician who had attempted to deduct as an advertising expense the value of unpaid medical advice he provided by telephone. We accepted that the taxpayer had "attempted to research the tax law to find authority for his position" and that

"he took steps to accurately document the extent of his telephone services by maintaining a log." Id., 1997 WL 52446, at *8. Nonetheless, we concluded that "this is not enough to be relieved of the accuracy-related penalty." Id. Because of "the weight of authority against * * * [the taxpayer's] position", we could not find his position reasonable. Id. Remy thus stands for the proposition that a misunderstanding of settled, unambiguous law cannot be "honest" or "reasonable" within the meaning of section 1.6664-4(b)(1), Income Tax Regs.

In the present case, any "confusion" petitioners might have had over their entitlement to an AOC for J.G. and G.G. for a fifth taxable year would not have been attributable to uncertainty or ambiguity in the relevant rules. The law unambiguously provides that a credit can be claimed under section 25A for an eligible student for only four taxable years. While the statutory provisions that impose that limitation may not be a model of clarity and simplicity,[5] the 2011 Instructions for Form 8863, which Mr. Galloway professed to have followed, state clearly and unambiguously on their front page that the AOC is "Available **ONLY** for **4** tax years per eligible student (including any year(s) Hope credit was

---

[5]Sec. 25A(b)(2)(A) provides: "An election to have this section apply with respect to any eligible student for purposes of the Hope Scholarship Credit under subsection (a)(1) may not be made for any taxable year if such an election * * * is in effect with respect to such student for any 2 prior taxable years." Sec. 25A(i)(2) provides that sec. 25A(b)(2)(A) "shall be applied by substituting '4' for '2'."

claimed)". Given the clear directive in the instructions to the 2011 Form 8863, even if petitioners' alleged confusion related to the number of years for which they could claim an education credit for each of their dependent children, that confusion would not have been reasonable under the circumstances. Because petitioners have not met their burden of establishing that they claimed the AOC in issue on the basis of an honest misunderstanding of law that was reasonable under the circumstances, we need not consider whether, as respondent alleges, petitioners' failure to return the excessive portion of the refund they received demonstrates a lack of good faith.

D. Conclusion

Because respondent has met his burden of producing evidence that the accuracy-related penalty he determined is appropriate, and because petitioners have not met their burden of demonstrating their eligibility for relief from the determined penalty, we sustain respondent's imposition of a $1,500 accuracy-related penalty on petitioners for 2011 under section 6662(a) and (b)(2).

Decision will be entered

for respondent.