Haines, Judge: Rick D. Feller petitioned the Court for redetermination of the following penalties: Penalty Year sec. 6663 1992 . $78,481 1993 . 56,689 1994 . 43,566 1995 . 58,660 1996 . 59,963 1997 . 58,552 Hereafter, the years 1992, 1993, 1994, 1995, 1996, and 1997 will be referred to as the years at issue. After concessions, the issues for decision are: (1) Whether the issuance of the notice of deficiency for each of the years at issue is barred by the expiration of the limitations period for assessment under section 6501; and (2) whether petitioner’s overstated prepayment credits for the years at issue resulted in underpayments of income tax attributable to fraud pursuant to sections 6663 and 6664.[1] In so deciding, we must determine the validity of section 1.6664-2(c)(1) and (g), Example (3), Income Tax Regs. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. At the time petitioner filed his petition, he resided in Ohio. Petitioner’s Business Petitioner earned a bachelor of science degree in accounting from the University of Akron in 1976 and received a certified public accountant certificate from the State of Ohio in 1980. In 1984 petitioner became a partner in the small accounting firm of Skonk, Feller, Tuber & Brown.[2] In 1992 petitioner and two additional partners of the firm became 100-percent owners of stock in SFT Health Care Corp. (sft). SFT owned two nursing homes, Red Carpet Health Care Center and Southeastern Health Care Center. Petitioner served as president of the nursing homes throughout the years at issue. In his capacity as president, petitioner visited the nursing homes once or twice a week and oversaw their operations. He also was responsible for the financial reporting and preparation of tax returns associated with the nursing homes and SFT. Red Carpet Health Care Center Forms W-2 For the years at issue petitioner attached to his Federal income tax returns Forms W-2, Wage and Tax Statement, reporting actual wages from Red Carpet Health Care Center of $17,781, $17,602, $19,202, $33,571, $19,016, and $23,580 with Federal withholdings of $366, $300, $464, $1,025, $350, and zero, respectively. Petitioner also attached to his Federal income tax returns for the years at issue fictitious Forms W— 2 purportedly issued by Red Carpet Health Care Center and reporting fictitious wages of $120,000, $100,000, $75,000, $75,000, $75,000, and $72,500 and fictitious Federal withholdings of $65,000, $52,000, $39,000, $40,500, $40,750, and $41,750, respectively. Southeastern /Barnesville Health Care Center Forms W-2 For 1992 petitioner attached to his Federal income tax return a Form W — 2 issued by Southeastern Health Care Center reporting actual wages of $23,739 and Federal withholding of $1,334. Petitioner also attached to his Federal income tax return a second, fictitious Form W-2 purportedly issued by Southeastern Health Care Center reporting fictitious wages of $120,000 and fictitious withholding of $70,000. For 1993, 1994, 1995, 1996, and 1997 petitioner attached to his Federal income tax returns Forms W-2 issued by Barnesville Health Care Center[3] reporting actual wages of $25,536, $28,161, $47,960, $80,119, and $80,119 with Federal withholdings reported of $1,253, $650, $990, $2,210, and $2,210, respectively. Petitioner also attached to his Federal income tax return fictitious Forms W-2 purportedly issued by Barnesville Health Care Center reporting fictitious wages of $100,000, $75,000, $80,000, $80,000, and $75,000 with fictitious Federal withholdings reported of $52,000, $39,000, $43,500, $44,500, and $42,500, respectively. Other Falsifications For each of the years at issue petitioner included with his Federal income tax return a Schedule E, Supplemental Income and Loss, on which he reported a false amount of partnership losses generated by his accounting firm. Petitioner also included a Schedule A, Itemized Deductions, in which he reported an inflated itemized deduction for State and local income taxes paid that was based on the fictitious Forms W-2 he prepared. Refund Claims For 1992, 1993, 1994, 1995, 1996, and 1997 petitioner claimed refunds of $86,181, $57,349, $34,686, $48,776, $48,703, and $44,383, respectively. Criminal Case After a civil audit and a criminal investigation, criminal proceedings were initiated against petitioner in the U.S. District Court for the Northern District of Ohio. On January 23, 2003, petitioner pleaded guilty to willfully making and submitting a false tax return for 1997 in violation of section 7206(1). In his plea agreement, petitioner admitted that he filed deliberately falsified personal tax returns for each of the years at issue. He also admitted that for each of the years at issue he claimed a false income tax refund when he knew he actually owed income taxes and that he attached to his return a fictitious Form W-2 for each nursing home. On November 22, 2006, respondent mailed petitioner two notices of deficiency, one for 1992-95 and the other for 1996-97. The Form 4549-B, Income Tax Examination Changes, attached to each notice, among other things reduced income by the amount of fictitious wages, increased income for fictitious losses claimed from the partnership, and reduced itemized deductions by the amount of State taxes claimed on the fictitious Forms W-2. For each year the corrected tax liability was less than the tax shown on the return petitioner filed if claimed prepayment tax credits were ignored. However, section 1.6664-2(c)(1) and (g), Example (3), Income Tax Regs., requires excess withholding tax credits to be included in determining an underpayment under section 6663. Accordingly, the notices of deficiency determined fraud penalties under section 6663 based upon underpayments of income tax pursuant to section 6664 of $104,642, $75,584, $58,087, $78,214, $80,993, and $78,073 for 1992, 1993, 1994, 1995, 1996, and 1997, respectively. On November 27, 2006, respondent assessed adjustments related to petitioner’s overstatement of withholding tax credits for each of the years at issue through the mathematical error assessment procedures of section 6213(b)(1) and section 301.6201-1(a)(3), Proced. & Admin. Regs. On February 22, 2007, petitioner sought redeterminations, asserting that (1) pursuant to section 6501, the statute of limitations applied to bar assessment for each of the years at issue, and (2) section 1.6664-2(c)(1) and (g), Example (3), Income Tax Regs., including petitioner’s overstated withholding tax credits in the calculation of his underpayments is invalid. OPINION I. Period of Limitations on Assessment Petitioner argues that the issuance of the notices of deficiency was barred by section 6501(a). Section 6501(a) provides the general rule that the amount of any tax imposed must be assessed within 3 years after the return is filed. An exception to the 3-year rule is provided in section 6501(c)(1): (1) False return. — In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. Respondent argues that the period of limitations in section 6501(a) does not apply because petitioner filed false returns with the intent to evade taxes for the years at issue. See sec. 6501(c)(1). The burden of proof is upon respondent to prove that petitioner has filed a false return with the intent to evade tax for each year at issue. See sec. 7454(a); Rule 142(b). Because direct evidence of an intent to evade tax is rarely available, intent may be proved by circumstantial evidence and reasonable inferences from the facts. Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). Petitioner pleaded guilty to willfully making and submitting a false tax return for 1997 in violation of section 7206(1) and admitted, in his plea agreement, that to obtain refunds he falsified personal tax returns for each of the years at issue by attaching to his returns fictitious Forms W-2 which overstated income tax withheld. Throughout the 6 years at issue, petitioner was licensed as a certified public accountant practicing in an accounting firm that prepared income tax returns for clients. He held himself out to the public as sophisticated and knowledgeable in the preparation of tax returns. He prepared his own returns and those needed for businesses in which he had invested. Critically, petitioner falsified his own returns and Forms W-2 for the businesses in the same manner for 6 consecutive years and stopped only when confronted by the authorities. On each of his returns, among other things, he overstated and falsified (1) partnership losses, (2) itemized deductions for State taxes withheld, and (3) Federal withholding credits. Through his conduct he obtained $320,078 in Federal refunds to which he was not entitled over the 6-year period. Petitioner testified that he intended to pay back the refunds he received as soon as he overcame troubles in his personal life, but there is no evidence that petitioner at any time made an effort to repay even after his conduct was discovered. Petitioner’s explanation for his behavior is implausible. We find that respondent has shown by clear and convincing evidence that petitioner filed his returns for the years at issue with the intent to evade tax. See Brister v. United States, 35 Fed. Cl. 214 (1996) (involving an accountant and bookkeeper who overstated withholding credits to obtain refunds). Therefore, the 3-year period of limitations under section 6501(a) does not apply for any of the years at issue, and respondent was not barred from issuing the notices of deficiency for those years. II. Sections 6663 and 6664; Section 1.6664-2(c), Income Tax Regs. Respondent has established that petitioner intended to evade tax and thus engaged in fraudulent conduct. However, before there can be an imposition of a fraud penalty, respondent must also prove that the fraud resulted in underpayments of tax required to be shown on the returns. Section 6663(a) sets out the fraud penalty: SEC. 6663(a). Imposition OF Penalty. — If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud. The term “underpayment” is defined in section 6664(a) as follows: SEC. 6664(a). Underpayment. — For purposes of this part, the term “underpayment” means the amount by which any tax imposed by this title exceeds the excess of— (1) the sum of— (A) the amount shown as the tax by the taxpayer on his return, plus (B) amounts not so shown previously assessed (or collected without assessment), over (2) the amount of rebates made. For purposes of paragraph (2), the term “rebate” means so much of an abatement, credit, refund, or other repayment, as was made on the ground that tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made. Neither paragraph (1)(B) nor (2) applies in this case. Section 1.6664-2(c)(1), Income Tax Regs., interprets the definition of “underpayment” in section 6664 by stating that the tax shown on the return is reduced by the excess of: (i) The amounts shown by the taxpayer on his return as credits for tax withheld under section 31 (relating to tax withheld on wages) * * * over (ii) The amounts actually withheld, * * * with respect to a taxable year before the return is filed for such taxable year. The regulation extends the meaning of “underpayment” to include a taxpayer’s overstated credits for withholding. Sec. 1.6664-2(g), Example (3), Income Tax Regs. Accordingly, if a taxpayer overstates prepayment credits, such as the credit for wages withheld, the overstatement decreases the amount of tax shown on the return and increases the underpayment of tax. Sadler v. Commissioner, 113 T.C. 99, 103 (1999). Petitioner contends that section 1.6664-2(c)(1) and (g), Example (3), Income Tax Regs., is invalid because the statute which it interprets, section 6664, does not refer to credits for tax withheld, and it was not Congress’ intent to include withholding credits in the calculation of an underpayment. Petitioner notes that repealed section 6653, which previously had imposed the fraud penalty, defined an underpayment with reference to a deficiency as defined in section 6211. Section 6211(b)(1) excludes credits for taxes withheld from the calculation of a. deficiency, and consequently such credits did not affect the calculation of an underpayment under repealed section 6653(c). Therefore, petitioner bases his argument in legislative history that the definition of an underpayment in section 6664(a) as in effect for the years at issue was “not intended to be substantively different from * * * [previous] law.” H. Rept. 101-247, at 1394 (1989). Respondent argues that Congress enacted a new penalty regime and significantly reworded the definition of “underpayment” for income tax purposes, thereby justifying the Secretary’s clarification of the treatment of overstated prepayment credits. As a threshold matter, both parties agree that the regulation was issued under section 7805(a) and is applicable to the computation of the underpayments in the instant case. Accordingly, our next step is to determine whether the regulation warrants judicial deference. III. Judicial Deference Much ink has been spilled on the question of the level of judicial deference to be afforded to regulations. See, e.g., Berg, “Judicial Deference to Tax Regulations: A Reconsideration in Light of National Cable, Swallows Holding, and Other Developments”, 61 Tax Law. 481 (2008). The Court of Appeals for the Sixth Circuit, to which any appeal of this case would lie absent a written stipulation to the contrary, has held that regulations issued under the general authority of the Secretary to promulgate necessary rules, with notice and comment procedures, are entitled to judicial deference as outlined by the U.S. Supreme Court in Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). See sec. 7482(b)(2); Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971); Estate of Timken v. United States, 601 F.3d 431, 434-435 (6th Cir. 2010); Estate of Gerson v. Commissioner, 507 F.3d 435 (6th Cir. 2007), affg. 127 T.C. 139 (2006). In Chevron, the Supreme Court addressed the circumstances in which the judiciary is to afford an agency discretion to interpret the statutes the agency administers. In what is commonly referred to as the two-step “Chevron analysis”, the Supreme Court stated: When a court reviews an agency’s construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute. [Id. at 842-843; fn. refs, omitted.] Chevron step 1 requires us to determine whether the statute clearly expresses the intent of Congress. If the statute is “silent or ambiguous with respect to the specific issue” before the Court, Chevron step 2 requires us to determine whether the regulation “is based on a permissible construction of the statute.” “[T]he cardinal rule [is] that a statute is to be read as a whole * * * since the meaning of statutory language, plain or not, depends on context.” King v. St. Vincent’s Hosp., 502 U.S. 215, 221 (1991). Sections 6663 and 6664 impose a fraud penalty when taxpayers, with intent to evade, underpay the income tax shown on their returns. We will examine the language and history of those sections to determine what the term “underpayment” means in the context of a fraud statute. The examination requires us to analyze the definitions of a “deficiency” and of an “underpayment” and their interrelationship, if any, in interpreting sections 6663 and 6664. We must consider whether an underpayment can exist without a deficiency. The definition of a deficiency in section 6211(a) as it relates to income tax has remained essentially unchanged since the 1954 codification of the internal revenue laws.[4] The basic formula is to determine the correct tax and reduce it by the tax reported by the taxpayer. The resulting amount is the deficiency. In calculating the deficiency, estimated tax payments and withholding credits are ignored. Sec. 6211(b)(1). The definition of an underpayment for purposes of the civil fraud penalty remained unchanged from the 1954 codification of the Internal Revenue Code until 1989. In 1989 Congress repealed sections of the Code,[5] including section 6653, that imposed accuracy-related penalties and replaced them with sections 6662 through 6665. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(a), 103 Stat. 2395. Congress’ primary focus in enacting a new penalty regime was to alleviate taxpayer confusion and the difficulties of administration of several different penalties relating to the accuracy of a tax return. H. Rept. 101-247, supra at 1388. The House report also stated that the definition of “underpayment” in section 6664(a) was not “intended to be substantively different from * * * [previous] law.” Id. at 1394. Repealed section 6653(b)(1) provided that if any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return was due to fraud, certain penalties applied.[6] Section 6653(c) tied the definition of an underpayment to the definition of a deficiency. SEC. 6653(c). Definition of Underpayment. — For purposes of this section, the term “underpayment” means— (1) Income, estate, gift, and certain excise taxes. — In the case of a tax to which section 6211 (relating to income, estate, gift, and certain excise taxes) is applicable, a deficiency as defined in that section (except that, for this purpose, the tax shown on a return referred to in section 6211(a)(1)(A) shall be taken into account only if such return was filed on or before the last day prescribed for the filing of such return, determined with regard to any extension of time for such filing) * * * The basic formula (correct tax - reported tax = underpayment) applied and, because of the application of section 6211(b)(1), estimated payments and withholding credits did not enter into the calculation. Sections 6663 and 6664 replaced repealed section 6653. For convenience, we again set out the pertinent portions of sections 6663 and 6664. Section 6663(a) deals with imposition of the fraud penalty: SEC. 6663(a). Imposition op Penalty. — If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud. The term “underpayment” is defined in section 6664(a) as follows: SEC. 6664(a). UNDERPAYMENT.— For purposes of this part, the term “underpayment” means the amount by which any tax imposed by this title exceeds the excess of— (1) the sum of— (A) the amount shown as the tax by the taxpayer on his return, The basic formula (correct tax - reported tax = underpayment) is retained and, to that extent, the definition of an underpayment is not substantively different from previous law. In a case involving a deficiency and fraud in which no excess withholding credits are claimed, the calculation of an underpayment is unchanged. In that context, the terms “deficiency” and “underpayment” can be used interchangeably. However, in a fraud case where there is no deficiency but excess withholding credits have been claimed, as is the case here, or in a fraud case where there is a deficiency and such credits have been claimed, the effect of the statutory changes, in relation to the amount of any underpayment, is unclear from sections 6663 and 6664(a) on their face. The definition of an underpayment is no longer tied to the definition of a deficiency under section 6211, as it had been in section 6653(c), and the restrictions in section 6211(b)(1), excluding estimated tax and withholding credits from the calculation of a deficiency, no longer apply to an underpayment by explicit cross-reference. Consequently, the statutes do not speak expressly to the precise issue whether withholding credits can be taken into account when calculating an underpayment for purposes of sections 6663 and 6664(a). Therefore, we find under Chevron step 1 that for the determination of an underpayment, Congress seems to have retained the basic formula (correct tax - reported tax = underpayment) in section 6664 but has deleted the express cross-reference to the definition of a deficiency in section 6211. Section 6664 is silent and ambiguous with respect to the issue before us; i.e., Congress has not directly addressed the meaning of the term “underpayment” when a taxpayer has overstated withholding credits. The Secretary has promulgated section 1.6664-2(c)(1) and (g), Example (3), Income Tax Regs., to address the issue. Under Chevron step 2 we must determine whether the regulation is based upon a permissible construction of the statute. We “need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading * * * [we] would have reached if the question had arisen in a judicial proceeding.” Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 843 n.11. Rather, “considerable weight should be accorded to an executive department’s construction of a statutory scheme it is entrusted to administer.” Id. at 844. The Court should not disturb the agency’s action unless it appears from the statute or its legislative history that it is one that Congress would not have sanctioned. Id. at 845. On March 4, 1991, the Federal Register published a notice of proposed rulemaking regarding the accuracy-related penalty under section 6662, the fraud penalty under section 6663, and the definitions and rules for purposes of both penalties under section 6664. See Notice of Proposed Rule-making, 56 Fed. Reg. 8943 (Mar. 4, 1991). The preamble to the proposed regulations explained that: (1) Overstated prepayment credits increase the amount of an underpayment but have no effect on the calculation of a deficiency; (2) whether a position with respect to an item has substantial authority or is disclosed on a return is relevant to the determination of the amount of a deficiency, but not to the determination of the amount of an underpayment; and (3) the amount of an underpayment is reduced by amounts not shown on the return that have been previously assessed (or collected without assessment), but the amount of a deficiency is not. Id. at 8947. Commentators on the proposed regulation objected to factoring in overstated prepayment credits in the calculation of the underpayment. The basis of their objection was that the overstated prepayment credits are not taken into account in computing the amount of a deficiency under section 6211. A public hearing was held on June 3, 1991. The proposed regulations were adopted and published as final regulations on December 31, 1991. T.D. 8381, 1992-1 C.B. 374. The preamble to the accuracy-related penalty final regulations rejected the position of the commentators and stated: “There are differences in the section 6664 definition of ‘underpayment’ and the section 6211 definition of ‘deficiency’ that warrant taking overstated prepayment credits into account for purposes of the accuracy-related penalty.” Id., 1992-1 C.B. at 379. For convenience, we will again set out the pertinent portion of the regulations. Section 1.6664-2(c)(1), Income Tax Regs., interprets the definition of “underpayment” in section 6664 by stating that the tax shown on the return is reduced by the excess of: (i) The amounts shown by the taxpayer on his return as credits for tax withheld under section 31 (relating to tax withheld on wages) * * * over (ii) The amounts actually withheld, * * * with respect to a taxable year before the return is filed for such taxable year. Petitioner contends that the regulation is inconsistent with congressional intent.[7] He stresses the House report which stated that the definition of “underpayment” in section 6664(a) was not “intended to be substantively different from * * * [previous] law.” H. Rept. 101-247, supra at 1394. On the basis of that statement, petitioner argues that the definition of an underpayment, as contemplated by section 6664, should not be different from what it was under section 6653(c) and thus withholding credits should be excluded from the computation of an underpayment. We disagree with petitioner’s position. Neither section 6664(a) nor the regulation differs substantively from prior law. The basic formula (correct tax - reported tax = underpayment) is retained, and in cases involving a deficiency in which no excess withholding credits are claimed, the calculation of an underpayment, for purposes of section 6664 and its regulations, is no different from what it would have been under former section 6653(c)(1). If Congress had intended the old and the new penalty regimes to be identical in every respect, we may infer that it would have equated the term “underpayment” with “deficiency” and carried forward section 6653(c)(1) verbatim into section 6664(a).[8] Congress did not do so. Congress has amended section 6664 on three occasions but has not altered the definition of the term “underpayment” in response to the regulation. See Pension Protection Act of 2006, Pub. L. 109-280, sec. 1219, 120 Stat. 1083; Gulf Opportunity Zone Act of 2005, Pub. L. 109-135, sec. 403, 119 Stat. 2615; American Jobs Creation Act of 2004, Pub. L. 108-357, sec. 812, 118 Stat. 1577. The Secretary has followed Congress’ intent to carve out a specialized set of rules for the penalties applicable to the accuracy of a return. The application of the regulation is by its terms specifically limited to underpayments for purposes of section 6662 (relating to the accuracy-related penalty) and section 6663 (relating to the fraud penalty) for purposes of income taxes imposed under subtitle A. Sec. 1.6664-2(a), Income Tax Regs. By fleshing out the mechanics of what factors into the section 6664 underpayment calculation when a deficiency is not present, it promotes fairness in the administration of the penalties. It also facilitates the standardization of the reasonable cause/good faith exception criteria for the application of all accuracy-related penalties. Our examination of whether the regulation is based on a permissible construction of section 6664 reveals that the Secretary reasonably construed the statute through the regulation. Accordingly, we hold the regulation to be valid. See Estate of Gerson v. Commissioner, 507 F.3d at 441. If the Commissioner proves that any portion of an underpayment is due to fraud, the entire underpayment will be treated as attributable to fraud for purposes of the penalty under section 6663(b), except any portion of the underpayment that the taxpayer establishes by a preponderance of the evidence is not attributable to fraud. Knauss v. Commissioner, T.C. Memo. 2005-6. Respondent has proved that petitioner committed fraud in filing his returns for the years at issue. Petitioner has not shown that any portion of the underpayment in any year at issue is not attributable to fraud. Therefore, the underpayments for the years at issue are subject in their entirety to fraud penalties. Sec. 6663(b). In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit. To reflect the foregoing, Decision will be entered for respondent. Reviewed by the Court. Colvin, Cohen, Wells, Gale, Thornton, Goeke, Kroupa, Holmes, Paris, and Morrison, JJ., agree with this majority opinion. Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar. The firm went through several name changes. It was originally called Tuber & Shonberg, Inc., then Skonk, Feller & Tuber, and finally Skonk, Feller, Tuber & Brown. Southeastern Health Care Center changed its name to Barnesville Health Care Center in 1993. SEC. 6211. DEFINITION OF A DEFICIENCY. (a) In General. — For purposes of this title * * * the term “deficiency” means the amount by which the tax imposed by Subtitle A or B * * * exceeds the excess of— (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amount previously assessed (or collected without assessment) as a deficiency, over— (2) the amount of rebates, as defined in subsection (b)(2), made. (b) Rules for Application of Subsection (a). — For purposes of this section— (1) The tax imposed by subtitle A and the tax on without regard to payment on account of estimated tax, without regard to the credit under section 31 * * * Secs. 6653, 6659, 6659A, 6660, and 6661. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(c), 103 Stat. 2399. Sec. 6662 was stricken and replaced by a new sec. 6662. Id. sec. 7721(a), 103 Stat. 2395. The amount of penalty was increased in stages over the years from 50 percent of the underpayment to 75 percent of the underpayment and 50 percent of the interest payable under sec. 6601. Petitioner cites several cases in support of the proposition that the term “underpayment” is equivalent to the term “deficiency” under current law. See Estate of Capehart v. Commissioner, 125 T.C. 211, 224 (2005); Downing v. Commissioner, T.C. Memo. 2005-73, supplementing T.C. Memo. 2003-347; Estate of Johnson v. Commissioner, T.C. Memo. 2001 — 182, affd. 129 Fed. Appx. 597 (11th Cir. 2005). Each of these cases dealt with a situation in which the taxpayer’s underpayment under sec. 6664 also constituted the deficiency under sec. 6211. None dealt with the overstatement of prepayment credits. One salient change was the omission from the new statute of the parenthetical clause found in sec. 6653(c), under which the tax shown on a late return did not count. This created a gap that the Secretary has filled by regulations taking account of the tax shown on a “qualified amended return.” Sec. 1.6664 — 2(c)(2) and (3), Income Tax Regs.