157 T.C. No. 5

UNITED STATES TAX COURT

MICHAEL LISSACK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 399-18W.                    Filed August 17, 2021.

P filed Form 211, Application for Award for Original Information, claiming that T had failed to report membership fees as gross income. R initiated an examination on the basis of P's claim. During the examination R determined that T had properly treated the membership fees as nontaxable deposits but also discovered an unrelated issue--that T may have claimed an erroneous deduction. R expanded the scope of the examination to include the latter issue and ultimately disallowed the deduction, yielding a $60 million adjustment. R subsequently denied P's whistleblower claim on the ground that he had not supplied any information about the erroneous deduction.

A whistleblower is eligible for an award only if R "proceeds with an[] administrative or judicial action * * * based on information" supplied by the whistleblower and collects proceeds "as a result of the action." I.R.C. sec. 7623(b)(1). The parties have filed cross-motions for summary judgment addressed to the question whether P is entitled to an award under this standard.

**Served 08/17/21**

Held: Although R proceeded with an administrative action, P is not eligible for a whistleblower award because R did not collect any proceeds "as a result of the action." See I.R.C. sec. 7623(b)(1). The examination of the erroneous deduction issue constitutes a separate administrative action that was not initiated on the basis of P's claim. See sec. 301.7623-2(a)(2), (b)(1) and (2), Example (2), Proced. & Admin. Regs.

Held, further, the construction of I.R.C. sec. 7623(b)(1), as set forth in these regulations, is valid under Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984).

Scott A. Knott, Erica L. Brady-Gitlin, and Gregory S. Lynam, for petitioner.

Paul Colleran and Tara P. Volungis, for respondent.

OPINION

LAUBER, Judge: In 2009 petitioner filed a claim for a whistleblower award under section 7623.[1] He informed the Internal Revenue Service (IRS or respondent) that a group of entities had failed to include in gross income millions of dollars of membership fees. The IRS Whistleblower Office (Office) processed his claim and referred it to a revenue agent, who initiated an examination. The reve-

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

nue agent determined that the entities had properly treated the membership fees as nontaxable deposits. But he separately discovered an unrelated issue--that the entities had claimed an erroneous deduction--and made a $60 million adjustment on that account. The Office denied petitioner's claim because the adjustment was unrelated to the information he had supplied.

Section 7623(b)(1) provides that a whistleblower is entitled to an award only if the IRS proceeds "based on" the information he supplied and collects proceeds "as a result of the action." The parties have filed cross-motions for summary judgment as to whether petitioner is entitled to an award under this standard. Concluding that respondent has the better argument, we will grant his motion for summary judgment and deny petitioner's.

## Background

The following facts are derived from the parties' pleadings and motion papers, including a declaration that attached the administrative record. Petitioner resided in Massachusetts when he filed his petition. We have jurisdiction under section 7623(b)(4).

Petitioner filed a Form 211, Application for Award for Original Information, which the Office received on February 6, 2009. Petitioner identified an affiliated group of entities (Target) that developed condominiums and offered golf

and beach club memberships to condominium residents. The residents paid substantial upfront membership fees, which Target treated as nontaxable deposits in the year received. Petitioner alleged that, in November 2008, Target changed its refund policy such that Target acquired "complete control over" the fees received that year. Petitioner asserted that Target was thus required to include the membership fees in gross income.

The Office assigned nine claim numbers to petitioner's case, evidently corresponding to the various entities comprising Target. The claim was referred to Nora Beardsley, the Office's senior tax analyst. Ms. Beardsley reviewed petitioner's claim and determined that it appeared to identify a discernible Federal tax issue.[2] See Internal Revenue Manual (IRM) pt. 25.2.2.12(1)(e) (Dec. 30, 2008). She accordingly forwarded the case to the IRS Large Business & International Division (LB&I), which examines "corporations and partnerships with assets greater than $10 million." See IRM pt. 1.1.24.1(2) (Sept. 24, 2020).

A revenue agent (RA) in LB&I reviewed petitioner's allegations by researching Target and analyzing the group's tax returns and IRS account tran-

_____

[2]Ms. Beardsley initially informed petitioner that the Office was rejecting his claim because he submitted it before Target's tax returns for 2008 were due. Ms. Beardsley subsequently determined that this was not a valid reason for rejection and reopened the case.

scripts. In July 2011 the RA initiated a Form 11369, Confidential Evaluation Report on Claim for Award. The RA noted that "no audit or investigation [had been] planned" by LB&I but that the "[i]nformation submitted by the whistleblower was sufficient to warrant beginning of examination."

After examining the facts and relevant law the RA concluded that Target "did not have unfettered right and dominion over the deposits" and thus "properly excluded the deposits from gross income in the year received." Finding that Target properly "deferred the recognition of the deposits," the RA "propose[d] no adjustment related to the membership deposits issue."

The RA returned Form 11369 to the Office on August 19, 2011. A few months later he prepared a report for the Office, stating that "the whistleblower claim was fully investigated" and "no change was proposed." But he indicated that he had identified another issue, namely a deduction in excess of $60 million that Target had claimed "for intercompany bad debt." See sec. 166. He stated that the bad debt issue would take some time to examine but that it was "unrelated to the subject of the whistleblower claims." Ms. Beardsley decided to keep the case open until the RA finished his further investigation.

In 2013 the RA completed his examination, and the IRS issued Target notices of proposed adjustment. The RA disallowed the $60 million bad debt deduc-

tion and made a number of other (relatively minor) adjustments, all for tax year 2009. These other adjustments affected four entities within Target and included such items as salaries and wages, taxes and licenses, and partnership losses.

The RA forwarded to Ms. Beardsley the entire case file, including the Forms 4549, Income Tax Examination Changes, and Forms 886-A, Explanation of Items, that had been issued to Target. These documents showed that none of the adjustments had anything to do with the membership deposits issue. When Ms. Beardsley asked the RA whether the "whistleblower submission contribute[d] to any of the adjusted issues," he replied (with emphasis) that petitioner had not "provided any information for the adjusted issues." Ms. Beardsley reviewed petitioner's submissions and confirmed that he had made no allegations and submitted no facts related to Target's intercompany debt (or any other adjustment).

Ms. Beardsley accordingly recommended that the Office deny petitioner's claim for award. She explained that, although "there was an assessment for additional taxes," the information petitioner supplied "was not relevant to those issues." The Office agreed with Ms. Beardsley's recommendation and on December 7, 2017, issued a final determination letter denying petitioner's claim. The letter stated that the claim had been denied "because the IRS took no action on the

issues you raised. * * * The IRS did assess additional tax, * * * but the information you provided was not relevant to those issues."

Petitioner timely petitioned this Court for review of the Office's determination. On September 1, 2020, respondent filed a motion for summary judgment. Petitioner timely responded to that motion and filed, on October 5, 2020, a cross-motion for partial summary judgment.

## Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b) we may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). However, this summary judgment standard "is not generally apt" when reviewing whistleblower award determinations because we "confine ourselves to the administrative record to decide whether there has been an abuse of discretion." Van Bemmelen v. Commissioner, 155 T.C. 64, 78 (2020). "In cases that are decided on the administrative record * * *, this Court ordinarily decides the issues raised by the parties by reviewing the administrative

record using a summary adjudication procedure." <u>Rowen v. Commissioner</u>, 156

T.C. __, __ (slip op. at 9) (Mar. 30, 2021).

B.     <u>Analysis</u>

Section 7623(a) authorizes the payment of sums necessary for "detecting

underpayments of tax" or "detecting and bringing to trial and punishment persons

guilty of violating the internal revenue laws or conniving at the same." Subsection

(b)(1) provides for nondiscretionary (i.e., mandatory) awards of at least 15% and

not more than 30% of the collected proceeds if all stated requirements are met.

Under section 7623(b)(1), an award can be paid only if the IRS "proceeds with

an[] administrative or judicial action * * * based on information brought to the

Secretary's attention." The whistleblower is entitled to an award only if the IRS

collects money "as a result of the action."[3] Sec. 7623(b)(1).

In 2014 the Department of the Treasury (Treasury) issued regulations inter-

preting section 7623(b). T.D. 9687, 2014-36 I.R.B. 486. These regulations define

key terms used in the statute and supply examples showing how these definitions

apply. <u>See</u> sec. 301.7623-2, Proced. & Admin. Regs. These regulations apply "to

---

[3]The original version of the statute contained a slightly different clause, providing that whistleblowers would receive a percentage of the collected pro-ceeds "resulting from the action." <u>See</u> 26 U.S.C. sec. 7623(b)(1) (2012). Because these clauses have the same meaning, we will refer to the current version of the statute for convenience.

information submitted on or after August 12, 2014, and to claims for award under sections 7623(a) and 7623(b) that are open as of" that date. <u>Id.</u> para. (f). Petitioner's claim was "open" as of August 12, 2014.

Among the terms defined by the regulations is the verb phrase "proceeds based on." <u>Id.</u> para. (b). The IRS "proceeds based on" the whistleblower's information when his information "substantially contributes to an [administrative or judicial] action against a person identified by the whistleblower." <u>Id.</u> para. (b)(1). That is true when the IRS "initiates a new action, expands the scope of an ongoing action, or continues to pursue an ongoing action, that the IRS would not have initiated, expanded the scope of, or continued to pursue, but for the information provided." <u>Ibid.</u> On the other hand the IRS does not "proceed based on" the whistleblower's information when it merely "analyzes the information provided or investigates a matter raised by the information provided." <u>Ibid.</u>

The regulation illustrates these principles with four Examples, one of which has particular relevance here. <u>See</u> id. para. (b)(2), <u>Example</u> (2). This Example posits a whistleblower who provides facts detailing how a taxpayer underpaid tax in Year 1. The IRS initiates an examination, investigates those facts, then expands the examination to determine whether the taxpayer, by engaging in the same activities, also underpaid tax in Year 2. During the examination the IRS obtains,

through information document requests (IDRs) and summonses, "additional facts that are unrelated to the activities described in the information provided by the whistleblower." Ibid. "Based on these additional facts," the IRS further expands the scope of the examination for Years 1 and 2. Ibid.

Example 2 concludes that the IRS "proceeds based on" the whistleblower's information by initiating the Year 1 examination and expanding it to include the same issue for Year 2. On the other hand, Example 2 concludes:

> The portions of the IRS's examination of the taxpayer in both Year 1 and Year 2 relating to the additional facts obtained through the issuance of IDRs and summonses are not actions with which the IRS proceeds based on the information provided by the whistleblower because the information provided did not substantially contribute to the action. [Ibid.]

In short, the regulation concludes that the portion of the examination that is unrelated to the facts and issue identified by the whistleblower is a separate "administrative action." See id. para. (a)(2) (defining "administrative action" as "all or a portion" of an IRS examination).

On his Form 211 petitioner claimed that Target received millions of dollars in membership fees during 2008 but did not include these amounts in gross income on the theory that they were nontaxable deposits. Petitioner contended that Target's theory was incorrect because of an asserted change in the relevant facts--

specifically, an alleged revision to Target's refund policy for membership fees. The IRS initiated an examination, and respondent concedes that it would not have initiated the examination "but for the information provided." See sec. 301.7623-2(b)(1), Proced. & Admin. Regs. The examination of the membership deposits issue is thus an "administrative action" that was initiated on the basis of the information petitioner supplied. See ibid.

This "administrative action," however, resulted in no adjustments to income and no collected proceeds. Indeed, the RA concluded that Target had "properly excluded the deposits from gross income in the year received." Because the IRS did not collect any proceeds "as a result of th[is] action," see sec. 7623(b)(1), petitioner is not eligible for a whistleblower award.

During the course of the examination the RA discovered an entirely separate issue--a deduction that Target reported for intercompany bad debt. The RA was alerted to this issue, not by any information in petitioner's Form 211, but by the RA's independent review of Target's tax returns. The RA expanded the audit to include the bad debt issue on the basis of "additional facts that are unrelated to the activities described in the information provided by" petitioner. Sec. 301.7623-2(b)(2), Example (2), Proced. & Admin. Regs. This portion of the examination, therefore, was "not [an] action[] with which the IRS proceed[ed] based on the

information provided by the whistleblower." Ibid.; see Whistleblower One 10683-13W v. Commissioner, 145 T.C. 204, 206 (2015) (stating that collection must be "attributable in some way to the information that * * * [the whistleblower] provided").

The administrative record shows that the Office did not abuse its discretion in denying petitioner's claim for award. Ms. Beardsley reviewed his allegations and forwarded his Form 211 to an RA in LB&I. The RA performed an examination of petitioner's claim and ultimately "propose[d] no adjustment related to the membership deposits issue." But he informed Ms. Beardsley that during the examination he discovered "issues unrelated to the whistleblower issue"--namely, that Target "took a deduction for intercompany bad debt." Ms. Beardsley decided to keep the case open while the RA examined the bad debt issue.

After completing his examination the RA sent Ms. Beardsley copies of the Forms 4549 and 886-A disallowing the $60 million bad debt deduction. These documents made clear that the deficiency determination did not arise from the membership deposits issue. Ms. Beardsley nevertheless took the extra step of asking the RA whether the "whistleblower submission contribute[d] to" the bad debt adjustment. The RA promptly responded, emphasizing that petitioner had not "provided any information for the adjusted issues." Ms. Beardsley again reviewed

petitioner's submissions and confirmed that they contained no information related to the intercompany bad debt.  On the basis of this record we have no difficulty concluding that the Office did not abuse its discretion in denying petitioner's claim for an award.

C.    Petitioner's Arguments

    1.    Validity of the Regulation

Petitioner supplied no information to the IRS about Target's intercompany bad debt deduction.  But he urges that "Congress did not intend to limit awards directly to the issues that the whistleblower provided information on."  Recognizing the impediments that the regulations impose to this argument, petitioner contends that the regulations are to that extent invalid.

In addressing petitioner's challenge we apply the familiar two-step test of Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984).  First we ask "whether Congress has directly spoken to the precise question at issue." Id. at 842; see City of Arlington v. FCC, 569 U.S. 290, 296 (2013).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Chevron, 467 U.S. at 842-843.  "If the statute is silent or ambiguous with respect to the question at issue, step two of Chevron requires the court to give deference to the

agency's construction, so long as it is permissible and not 'arbitrary, capricious, or manifestly contrary to the statute.'" <u>Whirlpool Fin. Corp. & Consol. Subs. v. Commissioner</u>, 154 T.C. 142, 175 (2020) (quoting <u>Chevron</u>, 467 U.S. at 844).

  a. <u>Chevron Step One</u>

  Section 7623(b)(1) provides that, "[i]f the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by an individual," that individual will, subject to specified conditions, receive an award of 15% to 30% of the amount collected. Congress did not define the term "administrative or judicial action." And section 7623(b) does not otherwise demarcate the contours of an "action" in a case such as this, where the IRS examination expands to matters unrelated to the issue identified by the whistleblower and to the facts he supplied. Congress therefore did not speak directly to the question at hand.

  Petitioner contends that the statute is unambiguous and that the challenged regulations are inconsistent with Congress' intent. He emphasizes the word "any" in the statute's opening clause, which asks whether the Secretary has proceeded with "any administrative or judicial action * * * based on information brought to the Secretary's attention by" the whistleblower. According to petitioner, "the statute does not require that the proceeds on which the award is determined flow

directly from the whistleblower's information." If the IRS initiates "any" action, he contends, then that action in its entirety constitutes the "action" for purposes of section 7623. Here, the IRS did initiate an action, viz., an examination of Target. And petitioner contends that the IRS proceeded with this action "based on information" he provided, viz., his identification of Target as a possible audit candidate.

We disagree with petitioner's submission that the statute is unambiguous. Subsection (b)(1) refers to any administrative or judicial action "described in subsection (a)." Sec. 7623(b)(1). But subsection (a) does not describe or define an "administrative or judicial action." Subsection (a) does not even refer to that term. It speaks only of paying an award "from the proceeds of amounts collected by reason of the information provided." Sec. 7623(a) (flush language).

Subsection (b) thus refers to a description in subsection (a) that does not exist. And whereas subsection (b) initially refers to commencement of "any * * * action," it defines the allowable award by reference to proceeds collected "as a result of <u>the action</u>." Sec. 7623(b)(1) (emphasis added). For both reasons, the statute leaves ample scope to the Secretary to define the term "administrative or judicial action." He did so in the regulations, which define an "administrative

action" to mean "all or a portion of" an IRS civil or criminal proceeding.  Sec.
301.7623-2(a)(2), Proced. & Admin. Regs.

The reference in subsection (a) to "amounts collected <u>by reason of</u> the infor-
mation provided" is also ambiguous.  Sec. 7623(a) (flush language) (emphasis
added).  The phrase "by reason of" may plausibly be interpreted to require a sub-
stantive contribution by the whistleblower, i.e., the furnishing of factual informa-
tion that actually helps the IRS identify where the bodies are buried.  This inter-
pretation is arguably supported by the final sentence of subsection (b)(1), which
says that the amount of any award "shall depend on the extent to which the * * *
[whistleblower] substantially contributed to such action."  On the other hand, the
"by reason of" requirement might be deemed satisfied, as petitioner urges, if a
whistleblower provides no useful factual information but only the name of an
allegedly noncompliant taxpayer.  This is precisely the sort of statutory ambiguity
that may usefully be dispelled by regulation.

Petitioner cites nothing in the statute's legislative history to support his
interpretation.  Rather, he relies solely on a technical explanation prepared by the
staff of the Joint Committee on Taxation (JCT).  <u>See</u> Staff of J. Comm. on
Taxation, Technical Explanation of H.R. 6408, The "Tax Relief and Health Care
Act of 2006," at 88 (J. Comm. Print 2006).  Such technical explanations are gen-

erally prepared by JCT staff members after a tax law has been drafted.[4]  These explanations are "not part of the legislative history" and do not constitute "direct evidence of legislative intent."  Zinniel v. Commissioner, 89 T.C. 357, 366-367 (1987); see United States v. Woods, 571 U.S. 31, 48 (2013) (ruling that JCT explanations are not "legitimate tool[s] of statutory interpretation" (quoting Bruesewitz v. Wyeth LLC, 562 U.S. 223, 242 (2011))).

In any event the JCT statement on which petitioner relies falls far short of showing that "Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842.  Congress added section 7623(b) to establish a mandatory award program, as a supplement to the preexisting program under which all awards were discretionary with the IRS.  See 26 U.S.C. sec. 7623 (2000).  Before describing the new law, the JCT staff noted that, under preexisting IRS administrative guidelines for discretionary awards, a whistleblower could receive a small award (up to 1% of the amount recovered) if his information "caused the investigation, but had no direct relationship to the determination of tax liabilities." Technical Explanation, supra, at 88.

---

[4]This particular explanation was published two days after the House passed the bill and the same day that the Senate passed the bill.

This statement does not help petitioner. The JCT staff was reciting a pre-existing IRS administrative guideline; there is no evidence that Congress intended to incorporate this guideline into the text of the amended statute. Moreover, the guideline addressed the section 7623(a) discretionary program, under which the IRS might pay a 1% award to a whistleblower who simply identified a noncompliant taxpayer, without supplying any substantive information about the tax violation. There is no evidence that Congress or the IRS believed that such "tip" awards should have any role to play under section 7623(b), which authorizes mandatory awards ranging from 15% to 30% of the collected proceeds.

        b.      Chevron Step Two

Under step two we must evaluate whether the regulation is a "reasonable interpretation" of the statute. Chevron, 467 U.S. at 844. We will give deference to the agency's construction unless it is "arbitrary, capricious, or manifestly contrary to the statute." Ibid. "In other words we must sustain the regulation so long as it represents a 'reasonable interpretation' of the law Congress enacted." Oakbrook Land Holdings, LLC v. Commissioner, 154 T.C. 180, 196 (2020) (quoting Chevron, 467 U.S. at 844); see Feller v. Commissioner, 135 T.C. 497, 508 (2010) (concluding that the Secretary's construction need not be the only permissible

one). We have no difficulty concluding that the regulation passes muster under this test.

The regulations issued in 2014 define what it means for the Secretary to "proceed[] based on information" provided by a whistleblower. Sec. 301.7623-2(b)(1), Proced. & Admin. Regs. The regulations also define "administrative action" as "all or a portion of an * * * [IRS] civil or criminal proceeding." Id. para. (a)(2). This means that a multi-issue examination may comprise more than one administrative action. While not disputing the validity of these definitions, petitioner insists that Example 2 "adds new limiting rules" that are "manifestly contrary to the plain language" of the statute and the balance of the regulations. We disagree.

Paragraph (b)(1) of the regulation supplies general rules for evaluating when the IRS "proceeds based on" or "does not proceed based on" information submitted by the whistleblower. Paragraph (b)(2) says that these principles "may be illustrated by the following examples," of which there are four. Example 2 illustrates a case where an administrative action represents a portion of a larger IRS examination, a situation explicitly contemplated by the definition of "administrative action" in paragraph (a)(2).

By way of analogy, assume that two different whistleblowers allege that a corporation underpaid its tax. The first whistleblower claims that the corporation failed to report gross income, and the IRS initiates an examination. A year later the second whistleblower asserts that the same corporation claimed an improper deduction, and the IRS expands its examination to include that issue.

In this hypothetical scenario the two portions of the examination constitute separate "administrative actions." Sec. 301.7623-2(a)(2), Proced. & Admin. Regs. The unreported income investigation is an action with which the IRS proceeded on the basis of the first whistleblower's information. And the deduction investigation is an action with which the IRS proceeded on the basis of the second whistleblower's information. Example 2 clarifies that a whistleblower will be rewarded only if the information that he supplied results in an adjustment. This is fully consistent with section 7623(b)(1), which provides that a whistleblower is eligible for an award only if the IRS collects proceeds "as a result of the action" and only if the whistleblower "substantially contributed to such action." Cf. Cook v. Commissioner, 269 F.3d 854, 858 (7th Cir. 2001) (noting that "examples set forth in regulations remain persuasive authority so long as they do not conflict with the regulations themselves"), aff'g 115 T.C. 15 (2000).

This hypothetical scenario is identical in principle to the situation in this case, except that the deduction action here was triggered, not by a second whistleblower, but by the RA's independent investigation of unrelated entries on Target's tax returns. Paragraphs (a)(2) and (b)(1), coupled with Example 2, work together to ensure that a whistleblower is rewarded only for providing information that substantially contributes to a distinct "administrative action." Otherwise whistleblowers would be incentivized to file innumerable claims as mere fishing expeditions, hoping that the IRS will find something wrong with those taxpayers' returns (related to the information they supplied or not). There is no evidence that Congress wished to encourage this sort of behavior.

In sum, we conclude that the regulatory provisions at issue, taken together, are not "arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844. Treasury reasonably determined that a multiple-issue IRS examination could comprise more than one "administrative action." And it reasonably concluded that the IRS does not "proceed based on" the whistleblower's information unless that information substantially contributes to the "administrative action" that generates proceeds. We accordingly reject petitioner's challenge to the regulation's validity.

2.    "Related Action"

Petitioner next contends that, even if Example 2 is valid, he should none-theless prevail because the portion of the examination pertaining to the bad debt issue constitutes a "related action."  Section 7623(b)(1) provides that a whistle-blower is entitled to an award if proceeds are "collected as a result of the action (including any related actions)."  A "related action" is "an action against a person other than the person(s) identified in the information provided and subject to the original action(s)."  Sec. 301.7623-2(c)(1), Proced. & Admin. Regs.  An action is not a "related action" unless "[t]he facts relating to the underpayment of tax * * * are substantially the same as the facts described and documented in the [original] information provided."  Id. para. (c)(1)(i).

The administrative action in which the RA pursued the bad debt issue is not a "related action" for two distinct reasons.  First, that action was not "an action against a person other than the person(s) identified in the information provided." Id. para. (c)(1).  The bad debt action, like the membership deposits action, was against the same group of nine entities to which we refer as Target.  Second, the "[t]he facts relating to" the bad debt action and the membership deposits action were not "substantially the same."  Id. para. (c)(1)(i).  Petitioner's reliance on the "related action" clause is thus unavailing.

Petitioner largely ignores the text of this regulation and instead hitches his wagon to the False Claims Act, 31 U.S.C. secs. 3729-3733 (2006), which he says served as a model for the drafters of section 7623(b). He argues that, under the False Claims Act, "if an administrative action under a different legal theory would be more efficient, the relator in the case would still be able to collect an award for amounts collected by the Government." This assertion is misplaced for at least two reasons. First, the False Claims Act, which is found in title 31 of the U.S. Code, has no application to a tax case such as this. Second, the IRS did not pursue "a different legal theory" for the membership deposits issue. Rather, it recovered proceeds by examining an entirely unrelated issue--the bad debt deduction--that was governed by different law and different facts.

3.    Disputes of Material Fact

Although petitioner argues that he is entitled to summary judgment, he contends that disputes of material fact prevent us from granting respondent's cross-motion. He asserts that the administrative record is devoid of information concerning "how and when" the RA identified the bad debt issue. In his view further discovery is necessary "to show the full story of the audit," including whether petitioner's Form 211 somehow tipped the IRS off to the bad debt deduction.

In Van Bemmelen, 155 T.C. at 79, we held that whistleblower award cases are not reviewed under the typical summary judgment standard. That is because whistleblower cases are "record rule" cases. Ibid. In a "record rule" case we "confine ourselves to the administrative record to decide whether there has been an abuse of discretion." Id. at 78. Once the Commissioner certifies the administrative record, "summary judgment serves as a mechanism for deciding, as a matter of law, whether the * * * [Office's] action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. at 79.

In whistleblower award cases the "administrative record comprises all information contained in the administrative claim file that is relevant to the award determination and not protected by one or more common law or statutory privileges." Sec. 301.7623-3(e)(1), Proced. & Admin. Regs. If a whistleblower believes that the administrative record is insufficient, then he is free to file a motion to supplement the record. See Van Bemmelen, 155 T.C. at 73; Kasper v. Commissioner, 150 T.C. 8, 20-21 (2018) (citing Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989)) (noting exceptions that may justify supplementation). Alternatively, the whistleblower may file a motion to compel production of documents. See Whistleblower One 10683-13W, 145 T.C. at 206-207. Petitioner has

filed no motion of either sort. Thus, for purposes of resolving the parties' cross-motions for summary judgment, we are confined to the administrative record that is before us.

The administrative record that is before us may not contain exhaustive information about "how and when" the RA identified the bad debt issue, e.g., which line entries on which returns caught his attention, or the date(s) on which he gleaned these insights. But the record provides more than enough evidence to confirm that petitioner is not eligible for a mandatory award. The record contains all of petitioner's submissions to the Office: None of these submissions includes any information about Target's intercompany debt, Target's reporting of a bad debt deduction, or the facts that would be relevant in assessing the propriety of such a deduction. In response to Ms. Beardsley's specific question whether the "whistleblower submission contribute[d] to any of the adjusted issues," the RA replied (with emphasis) that petitioner had not "provided any information for the adjusted issues." Because petitioner did not supply any information about the bad debt issue (or about the other issue that generated an adjustment), he is not entitled to an award under section 7623(b). No amount of discovery will change this fact.

To implement the foregoing,

An appropriate order and decision

will be entered for respondent.